**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CESAR MUÑOZ GONZALEZ, AKA
Blanco, AKA Cesar Gonzales, AKA
Ricardo Martines, AKA Ricardo O.
Martinez, AKA Ricardo Martinez-
Osorio, AKA Osorio Ricardo
*Applicant*,

v.

UNITED STATES OF AMERICA,
*Respondent*.

No. 20-71709

OPINION

Application to File Second or Successive Petition
Under 28 U.S.C. § 2255

Argued and Submitted June 11, 2021
Pasadena, California

Filed March 17, 2022

Before: Consuelo M. Callahan and Danielle J. Forrest,
Circuit Judges, and Richard Seeborg,[*] District Judge.

Opinion by Judge Forrest

---

[*] The Honorable Richard Seeborg, Chief United States District
Judge for the Northern District of California, sitting by designation.

## SUMMARY[**]

---

### Second or Successive 28 U.S.C. § 2255 Authorization

The panel denied Cesar Muñoz Gonzalez's application to file a second or successive 28 U.S.C. § 2255 motion asserting that his conviction for possession of a firearm in furtherance of a crime of violence or drug trafficking offense under 18 U.S.C. § 924(c) is invalid because his predicate crime—racketeering—is no longer a categorical "crime of violence" under a new rule of constitutional law announced in *United States v. Davis*, 139 S. Ct. 2319 (2019).

For purposes of this application, the only issue was whether Muñoz showed that his new *Davis* argument was "previously unavailable," as required by 28 U.S.C. § 2255(h)(2) for authorization of a second or successive § 2255 motion.

Based on the weight of authority, including the Supreme Court's interpretation of similar language in the Prison Litigation Reform Act, the panel adopted a pragmatic approach to determining whether a claim based on a new constitutional rule was "previously unavailable." Under this approach, the prisoner must show that the real-world circumstances that he faced prevented him, as a practical matter, from asserting his claim based on a new rule of law in his initial habeas proceeding. The panel recognized that pro se prisoners face unique difficulties when litigating habeas relief or anything else, and that language barriers, as Muñoz cited in his case, add to those difficulties. The panel

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

wrote that there is, however, nothing in the text or context of AEDPA's previously-unavailable-claim requirement suggesting that this limited exception to the otherwise broad prohibition against filing second or successive habeas proceedings was intended to be applied subjectively.

Applying this pragmatic approach that focuses on external barriers, the panel concluded that Muñoz cannot show that his new *Davis* argument was unavailable during his initial habeas proceedings, where the Supreme Court issued its decision in *Davis* shortly before Muñoz filed his reply brief in support of his initial habeas motion and a few months before that motion was decided; Muñoz had the facts that he needed for his claim; no systemic or external barrier prevented him from presenting his claim in his initial habeas proceeding; and Muñoz was clearly aware of *Davis* because he cited it in his reply brief in his initial habeas proceeding.

## COUNSEL

Brianna Mircheff (argued) and Deborah E. Gonzalez, Deputy Federal Public Defenders; Cuauhtemoc Ortega, Federal Public Defender; Federal Public Defenders Office, Los Angeles, California; for Applicant.

Bram M. Alden (argued), Assistant United States Attorney, Acting Chief, Criminal Appeals Section; Brandon D. Fox, Assistant United States Attorney, Chief, Criminal Division; Nicola T. Hanna, United States Attorney; Office of the United States Attorney, Los Angeles, California; for Respondent.

**OPINION**

FORREST, Circuit Judge:

Applicant Cesar Muñoz Gonzalez (Muñoz) seeks leave to file a second or successive motion for habeas relief under 28 U.S.C. § 2255. Muñoz asserts that his conviction for possession of a firearm in furtherance of a crime of violence or drug trafficking offense under 18 U.S.C. § 924(c) is invalid because his predicate crime—racketeering—is no longer a categorical "crime of violence" under a new rule of constitutional law announced in *United States v. Davis*, 139 S. Ct. 2319 (2019).[1] Whether Muñoz is entitled to file a second or successive motion depends on whether his *Davis* argument was "previously unavailable" to him. 28 U.S.C. § 2255(h)(2). Adopting a pragmatic approach, we conclude that this argument was available to Muñoz when his first habeas motion was still pending, and we deny him leave to file a second or successive motion.

## I.  BACKGROUND

Muñoz was convicted and sentenced for racketeering, drug trafficking conspiracy, and related offenses. Of particular importance here is his conviction for possession of a firearm in furtherance of a crime of violence or drug trafficking under 18 U.S.C. § 924(c). *United States v.*

---

[1] The verdict form did not require the jury to specify which conviction—racketeering or Muñoz's two drug offenses—served as the predicate offense for his § 924(c) conviction. The government concedes that, despite the uncertainty about which offense was the predicate for his § 924(c) conviction, Muñoz can establish that *Davis* at least advances his claim. *See Henry v. Spearman*, 899 F.3d 703, 706 (9th Cir. 2018) (petitioner need only show "*possible* merit to warrant a fuller exploration by the district court") (citation omitted).

*Torres*, 869 F.3d 1089, 1092–94 (9th Cir. 2017); Muñoz received a mandatory sentence of five years on this conviction, to run consecutively to the sentences imposed on his other convictions.

After an unsuccessful direct appeal[2], Muñoz filed a pro se § 2255 motion challenging his convictions. He raised five separate claims, none of which challenged his § 924(c) conviction. Three months after Muñoz filed his § 2255 motion, the Supreme Court decided *Davis*. 139 S. Ct. 2319. Ten days later, Muñoz filed his reply in support of his motion. At the suggestion of "another [inmate] in the law library," Muñoz argued in reply that the definition of "felony drug offense" was unconstitutionally vague based on the "very recent *U.S. v. Davis.*" Muñoz did not understand his *Davis* argument but included it "in case" it might help him. He did not make a *Davis* argument related to his § 924(c) conviction.

The district court denied Muñoz's § 2255 motion three months later, and Muñoz filed a notice of appeal. After the district court denied a certificate of appealability (COA) on limited remand, this court also denied a COA.

Eight months after the district court denied Muñoz's first § 2255 motion, he filed the subject motion, seeking leave from this court to file a second § 2255 motion in the district court to assert a new argument based on *Davis* that his § 924(c) conviction was invalid because his predicate racketeering conviction is no longer a categorical crime of violence. Muñoz contends that his § 924(c) conviction

---

[2] *Torres*, 869 F.3d at 1092; *United States v. Torres*, 711 F. App'x 829 (9th Cir. 2017), *cert. denied sub nom. Muñoz Gonzelez v. United States*, 138 S. Ct. 1601 (2018).

should be vacated and that he should be resentenced without the mandatory five-year consecutive sentence imposed for this conviction.

## II.  DISCUSSION

The court of appeals must grant leave for a federal prisoner to file a "second or successive" § 2255 motion in district court. *See* 28 U.S.C. §§ 2244(b)(3)(C), 2255(h); *United States v. Buenrostro*, 638 F.3d 720, 723 (9th Cir. 2011) (per curiam). Where the prisoner's proposed claim is based on a new constitutional rule, leave is given only if the prisoner makes a prima facie showing that the new rule was "made retroactive to cases on collateral review by the Supreme Court" and was "*previously unavailable*." 28 U.S.C. § 2255(h)(2) (emphasis added); *Tate v. United States*, 982 F.3d 1226, 1227 (9th Cir. 2020) (per curiam). For purposes of this application, the government does not dispute that *Davis* announced a new constitutional rule that applies retroactively. Thus, the only issue is whether Muñoz has shown that his new *Davis* argument related to his § 924(c) conviction was "unavailable" during his first habeas proceeding.

### A.  The "Previously Unavailable" Requirement

Neither we nor the Supreme Court has interpreted § 2255(h)(2)'s "previously unavailable" requirement, nor did Congress define this term. However, the Supreme Court has interpreted what "available" means in the context of the Prison Litigation Reform Act's (PLRA) requirement that prisoners exhaust the "administrative remedies as are available" before filing a lawsuit to challenge a prison condition. *Ross v. Blake*, 578 U.S. 632, 635 (2016). In that context, the Supreme Court explained that "the ordinary meaning of the word 'available' is 'capable of use for the

accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Id.* at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 737–38 (2001)). The Court further explained that this is a pragmatic analysis: "courts in this and other cases must apply [the availability standard] to the real-world workings of prison grievance systems." *Id.* at 643. For example, when a prison's administrative grievance system is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it," administrative remedies are not "available." *Id.* at 643–44. Likewise, the Court instructed that administrative remedies are not available when a prisoner is "thwart[ed] . . . from taking advantage of a grievance process through machinations, misrepresentation, or intimidation." *Id.* at 644.

Although *Ross* addressed a different statute, the Supreme Court's analysis is persuasive here. If the PLRA's availability-of-administrative-remedies standard is measured against "the real-world" practicalities that prisoners face, *id.* at 643, we see no reason why the Antiterrorism and Effective Death Penalty Act of 1996's (AEDPA) previously-unavailable-claim standard, which uses similar language, should not be interpreted to account for whether a prisoner seeking to raise a claim based on a new constitutional rule in a second or successive habeas proceeding could have, as a practical matter, raised that claim at an earlier time. *See* 28 U.S.C. § 2244(b)(2)(A).

Several of our sister circuits have adopted a pragmatic approach when interpreting AEDPA's "previously unavailable" requirement.[3] For example, in *In re Cathey*, the

---

[3] This same "previously unavailable" requirement also applies to second or successive habeas petitions filed under § 2254. 28 U.S.C.

Fifth Circuit refused to adopt a "strict rule" that a claim based on a new constitutional rule is available anytime the Supreme Court announces the rule before the inmate's initial habeas proceeding is concluded. 857 F.3d 221, 229–30 (5th Cir. 2017). Rather, that court recognized that there is "a gray area of previous unavailability [of a new constitutional rule] despite technical availability," and it adopted a "rebuttable presumption that a new rule of constitutional law was previously available if published by the time a district court ruled on a petitioner's initial habeas petition," which can be overcome by presenting "cogent arguments that [the claim] was previously unavailable" during the initial habeas proceedings. *Id.* at 229–30 (internal quotation marks and citation omitted).

Applying this pragmatic standard, the Fifth Circuit concluded that Cathey sufficiently established that his proposed claim was "previously unavailable" even though it was based on a constitutional rule that was announced well before his initial habeas proceedings were concluded—in fact, before he even filed his initial habeas petition. Cathey sought to bring a claim under *Atkins v. Virginia*, 536 U.S. 304 (2002), which held that imposing capital sentences against intellectually disabled prisoners violates the Eighth Amendment. *In re Cathey*, 857 F.3d at 223. Even though *Atkins* had already been decided, throughout his initial habeas proceedings, Cathey, who was represented by counsel, believed that his IQ was "outside of the range that

---

§ 2244(b)(2)(A). Requests for habeas relief brought under § 2255 are motions. 28 U.S.C. § 2255. Requests for habeas relief brought under U.S.C. § 2254 are referred to as petitions or applications. But regardless of whether the underlying collateral attack arises under § 2254 or § 2255, a request for permission to file a second or successive habeas filing is referred to as an application. We follow this nomenclature.

was then understood to satisfy the subaverage intellectual functioning prong of an *Atkins* claim." *Id.* at 230. Only after the state disclosed evidence that his IQ was lower than he had understood and that new science showed prior IQ tests could be inflated did he realize that he had a valid *Atkins* claim. *Id.* at 230–33. And those disclosures were both made after Cathey's first habeas petition was decided. *Id.* Under these circumstances, the Fifth Circuit found that Cathey made a sufficient showing that his *Atkins* claim was "previously unavailable" to warrant allowing him to present his second or successive petition to the district court. *Id.* at 233.

Similarly, in *In re Hill*, the Eleventh Circuit rejected a "mechanistic test" for assessing whether a claim based on a new rule of constitutional law was previously available. 113 F.3d 181, 183 (11th Cir. 1997) (per curiam). As an initial matter, the Eleventh Circuit assessed the previously unavailable requirement "with reference to the availability of the claim at the time the first federal habeas application was filed." *Id.* at 182. But it also required an inmate to "demonstrate the infeasibility of amending" his request for habeas relief if it is still pending when a new rule that applies retroactively is announced. *Id.* at 183. The court explained that its "pragmatic approach . . . properly recognizes that the liberal amendment policy applicable to habeas petitions may make claims based upon new rules of constitutional law 'available' to the petitioner during a prior habeas action, even when the claim would not have been available at the inception of that prior action." *Id.*

In that case, Hill sought to bring a claim under *Cage v. Louisiana*, 498 U.S. 39 (1990), and challenge his conviction based on an improper jury instruction. *In re Hill*, 113 F.3d at 182. *Cage* was issued while Hill's initial petition was still

pending. *Id.* at 183. After Hill filed his initial petition, the district court permitted him to present additional filings, and a year after *Cage* was decided Hill filed a supplemental brief that addressed other issues. *Id.* Hill's petition remained pending for an additional two and a half years, and yet he never asserted a claim based on *Cage*. *Id.* These facts were central to the Eleventh Circuit's denial of his request for leave to file a second or successive habeas petition, and it concluded "that the circumstances . . . conclusively refute Hill's contention that his *Cage* claim was 'previously unavailable' within the meaning [of AEDPA]." *Id.* at 184.

The Eighth Circuit also applies a pragmatic approach to determining unavailability. *Davis v. Norris*, 423 F.3d 868, 879 (8th Cir. 2005). In *Davis*, the prisoner sought to bring an *Atkins* claim in a second or successive petition. *Id.* at 878. Represented by counsel, the prisoner filed his first habeas petition after *Atkins* was argued in the Supreme Court but before a decision was issued. *Id.* at 879; *see also*, *Davis v. Norris*, No. CV 01-05188-SOH, Dkt. No. 17 (W.D. Ark. Apr. 1, 2002). The district court held an evidentiary hearing on the habeas petition three months after *Atkins* was issued and did not deny the petition until well over a year after that. *Id.* The evidence that the prisoner relied on in making his later-presented *Atkins* claims was also available to him during the pendency of his initial habeas proceeding. *See id*. Under these circumstances, the Eighth Circuit held that "the *Atkins* rule was not previously unavailable" because the prisoner "could have raised [it] in the district court." *Id.*

Based on the weight of authority, including the Supreme Court's interpretation of similar language in the PLRA, we likewise adopt a pragmatic approach to determining whether a claim based on a new constitutional rule was "previously unavailable," as required by AEDPA when a prisoner seeks

to file a second or successive request for habeas relief based on a new constitutional rule. 28 U.S.C. § 2244(b)(2)(A). Under this approach, the prisoner seeking to file a second or successive request for habeas relief must show that the real-world circumstances that he faced prevented him, as a practical matter, from asserting his claim based on a new rule of law in his initial habeas proceeding. If he makes this showing, leave to file a second or successive request for habeas relief must be granted.

## B.  Muñoz's Motion

We now turn to Muñoz's newly asserted *Davis* argument. As previously noted, the Supreme Court issued its decision in *Davis* shortly before Muñoz filed his reply brief in support of his initial habeas motion and a few months before that motion was decided. Thus, purely as a matter of timing, the *Davis* argument was available during Muñoz's initial habeas proceeding. And despite Muñoz's suggestion that the district court "seemed to deter" amendments or additional filings in his initial proceeding, the record does not establish that he would have been prohibited from amending his initial habeas motion to assert a *Davis* argument related to his § 924(c) conviction.

Nonetheless, Muñoz asserts that his new *Davis* argument was previously unavailable to him because it is unreasonable to expect a pro se prisoner with an eighth-grade education and no experience filing habeas applications to learn about a new rule of constitutional law and amend his habeas application to add a new claim in such a short time. He also lists other circumstances that added to his difficulty: his first language is Spanish, he taught himself how to look up cases on LexisNexis, and he did not have unlimited access to the prison law library. He further claims he "doesn't think [the

*Davis* decision] was available on the computer in the law library until after [he] mailed in [his] reply."

In describing his difficulties, Muñoz tries to minimize that he in fact *did* raise an argument based on *Davis* in his initial habeas proceeding. He contends that he did so only at another prisoner's suggestion and that he had not read *Davis*. He further claims that he did not understand *Davis* or what he had written about it in making his earlier argument. Finally, he asserts that he could not have amended his initial petition because he did "not know what it means to amend" a habeas motion or that he could have done so.

We do not dispute that pro se prisoners face unique difficulties when litigating requests for habeas relief, or anything else for that matter. *See, e.g.*, *Woods v. Carey*, 684 F.3d 934, 938 (9th Cir. 2012) (recognizing pro se prisoner litigants face "unique handicaps of incarceration" (quoting *Rand v. Rowland*, 154 F.3d 952, 958 (9th Cir. 1998) (en banc))). Nor do we doubt that language barriers add to those difficulties. But it is axiomatic that pro se litigants, whatever their ability level, are subject to the same procedural requirements as other litigants. *United States v. Merrill*, 746 F.2d 458, 465 (9th Cir.1984); *cf. Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006).

The difficulties that Muñoz identifies in and of themselves do not render a claim based on a new constitutional rule unavailable. *See Ross*, 578 U.S. at 643 (reasoning that an administrative remedy is unavailable only if it "is not capable of use to obtain relief"); *cf. Bills v. Clark*, 628 F.3d 1092, 1099–1100 (9th Cir. 2010) (holding that to establish eligibility for equitable tolling in habeas proceedings due to mental impairment, a prisoner must show, among other things, that "his mental impairment was an 'extraordinary circumstance' beyond his control"

(internal quotation marks and citation omitted)). Instead, his difficulties largely mirrored the general challenges pro se prisoners face when preparing legal filings; they did not effectively create an external barrier to his ability to amend his petition, especially given his awareness of the recent *Davis* decision. Nor were his difficulties inherently related to his claim being based on a new rule of law as opposed to his pro se status.[4]

The authorities discussed above focus on the real-world circumstances impacting whether a legal claim or remedy *can* be utilized or accessed by a prisoner. The circumstances relevant to this inquiry relate to: (1) the timing of the change in law, *see In re Hill*, 113 F.3d at 182; (2) whether the prisoner had a factual basis for a claim based on the new law and when the prisoner learned of that factual basis, *see In re Cathey*, 857 F.3d at 230–33; *cf. Hirabayashi v. United States*, 828 F.2d 591, 605 (9th Cir. 1987) (in corum nobis context delay is justified when a petitioner discovered new evidence that he could not reasonably have located earlier); and (3) whether there is a procedural avenue for presenting the new claim that is generally accessible, *see, e.g.*, *Ross*, 578 U.S. at 642; *cf. Lakawanna Cnty Dist. Atty v. Cross*, 532 U.S. 394, 405 (2001) (characterizing in dicta that § 2244(d)(1)(B) tolls "[the] 1-year limitations period while petitioner is prevented from filing application by an impediment . . . created by State action") (internal quotation marks and citation omitted). This analysis typically focuses

---

[4] In a similar context, we recently held that a prisoner is not denied "an unobstructed procedural shot" to present a claim based on a decision issued before the prisoner's initial § 2255 motion was exhausted because he filed his motion pro se. *Pavulak v. Blanckensee*, 14 F.4th 895, 897 (9th Cir. 2021) (per curium). As we explained, to conclude otherwise would "effectively overrule our precedent that there is no right to counsel in federal post-conviction proceedings." *Id.*

on external barriers. *See Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256–57 (2016) (holding that the "extraordinary circumstances" element for equitable tolling requires evidence of "an external obstacl[e]," which reflects the "requirement that a litigant seeking tolling show that some extraordinary circumstance *stood in his way"*) (internal quotation marks and citation omitted); *Smith v. Davis*, 953 F.3d 582, 588 (9th Cir. 2020) (recognizing that a habeas petitioner seeking equitable tolling must establish some extraordinary circumstance stood in the way of filing his petition within the one-year limitations period); *Grant v. Swarthout*, 862 F.3d 914, 924–26 (9th Cir. 2017) (finding that prison officials' delay in providing a prisoner with a requested certificate required for an in forma pauperis application caused the federal habeas petition's untimeliness); *Spitsyn v. Moore*, 345 F.3d 796, 801 (9th Cir. 2003) (holding that a petitioner's attorney's misconduct may justify equitable tolling). This makes sense because, as the Supreme Court has explained, "availability" relates to whether something is "capable of use for the accomplishment of a purpose" or "is accessible." *Ross*, 578 U.S. at 642 (internal quotation marks and citation omitted).

Perhaps it can be argued that "availability" may be analyzed either objectively (whether a claim is "capable of use" by or "accessible" to an ordinary prisoner) or subjectively (whether a particular prisoner can use or access a claim given his unique characteristics and limitations). But there is nothing in the text or context of AEDPA's previously-unavailable-claim requirement suggesting that this limited exception to the otherwise broad prohibition against filing second or successive habeas proceedings was intended to be applied subjectively. Indeed, serious fairness concerns would arise if a *legal claim* were deemed "available" to one prisoner but not another based on personal

factors specific to the prisoner. And certainly were we to conclude that a prisoner's comprehension of the law or experience with the legal system dictates whether a legal claim is available to him, the previously-unavailable-claim exception would be broadened far beyond its current application and become an open invitation for litigation.

Here, Muñoz points to his personal characteristics in arguing that his *Davis* argument was unavailable to him during his initial habeas proceeding. Again, we do not doubt that he faced difficulties in asserting his *Davis* argument. He has limited education, English is not his first language, he lacks legal experience, and he had a relatively short time—approximately three months—to discover the new rule established in *Davis* and amend his § 2255 motion.[5] But these characteristics, and the relatively short time frame he faced, are not the kinds of circumstances that render a claim based on a new rule of law "previously unavailable." The new rule existed; Muñoz had the facts that he needed for his claim; no systemic or external barrier prevented him from presenting his claim in his initial habeas proceeding; and Muñoz was clearly aware of *Davis* because he cited it in his reply brief in his initial habeas proceeding.

Therefore, we conclude that Muñoz cannot show that his new *Davis* argument was unavailable during his initial habeas proceedings. Nothing relevant to our inquiry changed

---

[5] Muñoz argues that his limited access to a law library prevented him from amending his petition. But he does not allege that he was prevented from visiting the law library or that there were prison conditions, such as lockdowns or placement in a secure housing unit, that prevented him from regular access. Indeed, Muñoz states in his declaration that he could research cases on LexisNexis, and that during the time he was writing his reply brief for his initial petition, he visited the law library five times.

between when Muñoz asserted his first *Davis* argument in his initial habeas proceeding and when he asserted his new *Davis* argument in his request for leave to file a second or successive habeas motion. The law and the factual basis on which he relies in asserting his new claim was available to him during his initial habeas proceeding. That he may not have recognized the specific *Davis* argument that he now seeks to raise until after his initial proceeding was concluded is no different from any other prisoner who fails to raise a habeas claim due to ignorance or lack of diligence, and it is not a basis for granting leave to file a second or successive habeas motion.

Muñoz's request for leave to file a second or successive § 2255 habeas motion is **DENIED.**