**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

MARTIN BRIAN JAUREGUI,
*Defendant-Appellant*.

No. 16-50429

D.C. No.
3:16-cr-00673-
LAB-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted July 10, 2018
Pasadena, California

Filed March 22, 2019

Before: Marsha S. Berzon and N. Randy Smith, Circuit
Judges, and P. Kevin Castel,[*] District Judge.

Opinion by Judge Berzon;
Concurrence by Judge Berzon;
Dissent by Judge Castel

---

[*] The Honorable P. Kevin Castel, United States District Judge for
the Southern District of New York, sitting by designation.

## SUMMARY[**]

### Criminal Law

Vacating a sentence and remanding for resentencing, the panel held that a sentence for conspiracy to import methamphetamine cannot, consistent with the Sixth Amendment's jury trial guarantee, be sustained solely by the defendant's admission that he conspired to import marijuana but that it was "reasonably foreseeable that the controlled substance may be methamphetamine."

The panel held that the district court erred in imposing a sentence exceeding the statutory maximum for conspiracy to import marijuana based on this admission, and that under plain error review, reversal is warranted.

Concurring, Judge Berzon wrote separately to emphasize the confusion that *United States v. Banuelos*, 322 F.3d 700 (9th Cir. 2003), has wrought, and to suggest that this court should reconsider it en banc.

Dissenting, District Judge Castel wrote that there was no plain error in sentencing the defendant for participation in a conspiracy to import methamphetamine, and that on this record he does not believe the defendant can be sentenced lawfully for the crime of conspiracy to import marijuana, a crime for which he has been neither charged nor convicted.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Kimberly S. Trimble (argued), Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Mark R. Rehe (argued), Assistant United States Attorney; Robert S. Brewer, United States Attorney; Helen H. Hong, Assistant United States Attorney, Chief, Appellate Section, Criminal Division; Nicole Ries Fox, Assistant United States Attorney; Office of the United States Attorney, San Diego, California; for Plaintiff-Appellee.

## OPINION

BERZON, Circuit Judge:

Under federal law, the statutory maximum sentence for conspiracy to import a controlled substance depends on the specific, agreed-upon controlled substance "involv[ed]." 21 U.S.C. §§ 960(b), 963. We consider whether, consistent with the Sixth Amendment's jury trial guarantee, Martin Jauregui's sentence for conspiracy to import methamphetamine can be sustained solely by his admission that he conspired to import marijuana but it was "reasonably foreseeable" that methamphetamine would be imported. We hold that it cannot.

### I

### A

In January 2016, Jauregui attempted to cross the U.S.-Mexico border into Southern California. He was foiled when border agents discovered packages containing over six

kilograms of methamphetamine in his car. Jauregui was arrested and questioned by two FBI agents.

During his interrogation, Jauregui told the agents he did not know there were drugs in the car, and went on to give the agents the following account: He had previously agreed with a man named Victor to smuggle marijuana into the United States. As the plan progressed, Victor gave Jauregui a car with the drugs loaded inside. At an uncle's urging, however, Jauregui decided not to go through with the marijuana smuggling and returned the car to Victor.

Later that day, Jauregui, wanting to visit his aunt near San Diego, asked Victor to borrow the car he had just returned. According to Jauregui, Victor told him that the drugs had been removed from the car. Throughout his interrogation, Jauregui repeatedly maintained that, at the time he crossed the border, he was unaware that drugs of any kind were hidden inside the car.

**B**

Jauregui was charged with one count of conspiracy to import methamphetamine, in violation of 21 U.S.C. §§ 952, 960, and 963, and one count of importation of methamphetamine in violation of 21 U.S.C. §§ 952 and 960. He pleaded guilty to the conspiracy count in exchange for the government's dismissal of the importation count.

At the plea colloquy, Jauregui's attorney at first provided the following factual basis for his plea:

> Beginning on a date unknown and continuing up to January 31st, 2016, Mr. Jauregui was in agreement with at least two other persons to commit a crime of importing a schedule I or

schedule II controlled substance under federal law. He became a member of the conspiracy knowing of its object to import a controlled substance and intending to help accomplish that object. And it was reasonably foreseeable that the controlled substance may be methamphetamine.

For clarification, the district court asked Jauregui's attorney, "[W]hat was the point about it being whether he knew it was methamphetamine or some other drug?" The attorney explained that Jauregui "believed he was agreeing to import marijuana, but it was reasonably foreseeable that the substance would be methamphetamine under the *Pinkerton* case," referring to the Supreme Court's decision in *Pinkerton v. United States*, 328 U.S. 640 (1946).

The district court then asked the government:

[D]o you agree with that factual basis on the conspiracy to import methamphetamine? Because he's pleading guilty to count one which is conspiracy to import methamphetamine, and a conspiracy is an agreement to do an illegal act. And if the illegal act is to import methamphetamine, then it's not to import some other prohibited drug. So if that is what he's pleading guilty to, then his factual basis is not adequate to satisfy count one unless the government is modifying the importation of methamphetamine to be a conspiracy to import methamphetamine or some other prohibited drug.

And if that's the case, what guidelines apply, the methamphetamine guidelines or the marijuana guidelines?[1]

The prosecutor answered that "it's going to be [the government's] position in sentencing that the methamphetamine guidelines apply" and "that he knowingly imported the drugs." The district court pointed out that "unlike an importation charge, a conspiracy charge [requires] a mens rea to do the object of a conspiracy." So, the court explained, "if the object of the conspiracy is to import methamphetamine, then you would have to know it was methamphetamine."

In response, the prosecutor said, "I think that he has to know that there was a possibility. I think he has to know that it was reasonably foreseeable that it could have been methamphetamine instead of marijuana." Apparently convinced, the district court noted that Jauregui had already "admitted that," and the prosecutor agreed. Thus, "[b]ased on the *Pinkerton* theory and [Jauregui's] agreement that it was reasonably foreseeable that the drugs . . . he thought he was bringing in could have been methamphetamine," the district court concluded that there was a factual basis for Jauregui's plea.

## C

A few months later, the district court held a sentencing hearing. In determining whether to apply a "minor role"

---

[1] Actually, as we shall explain, the pivotal question is not which guidelines apply, but which penalty provision of the relevant statute, 21 U.S.C. § 960(b), apply, and so what the maximum penalty is.

sentencing reduction,[2] the district court questioned Jauregui's version of events, noting that his story—that he had initially agreed to smuggle drugs across the border but had changed his mind—seemed "farfetched." The prosecutor responded that it had "pushed him very hard on that" but that Jauregui, whom the prosecutor called "very simple, very naïve," nonetheless "kept to his story." The court, however, disbelieved Jauregui's story and rejected Jauregui's request for a minor-role reduction.

Jauregui's attorney asked the district court to apply the Sentencing Guidelines for marijuana, because "[t]he way that [Jauregui] pleaded was that the agreement was for marijuana, although it was reasonably foreseeable it could be methamphetamine by the time it happened." The district court disagreed and so applied the Guidelines for methamphetamine. The court ultimately sentenced Jauregui to seventy-one months' incarceration. Jauregui did not object to the imposed sentence. This timely appeal followed.

## II

The Sixth Amendment's jury trial guarantee limits the judiciary's power to sentence criminal defendants. To impose a sentence above a statutory maximum, a court may not rely on any fact (other than a prior conviction) not found by a jury or admitted by the defendant. *See Apprendi v. New*

---

[2] The U.S. Sentencing Guidelines permit a sentencing reduction "[b]ased on the defendant's role in the offense." U.S. Sentencing Guidelines Manual § 3B1.2 (U.S. Sentencing Comm'n 2016) [hereinafter U.S.S.G.].

*Jersey*, 530 U.S. 466, 490 (2000); *United States v. Guerrero-Jasso*, 752 F.3d 1186, 1190 (9th Cir. 2014).**[3]**

Jauregui's present challenge to his sentence was not raised before the district court, so we review for plain error. *See United States v. Chavez*, 611 F.3d 1006, 1009 (9th Cir. 2010) (per curiam); *see also* Fed. R. Crim. P. 52(b). Under that standard, relief is warranted if (1) there was error, (2) the error was plain, (3) the error affected substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Depue*, 912 F.3d 1227, 1232 (9th Cir. 2019) (en banc).

Federal drug crime statutes specify offenses covering all "controlled substances," not certain drug types or quantities. The permissible sentencing ranges, however, vary based on the drug type and quantity involved. *See, e.g.*, 21 U.S.C. §§ 841(b), 960(b); *see also United States v. Buckland*, 289 F.3d 558, 565–66 (9th Cir. 2002) (en banc). For purposes of *Apprendi*, because drug type and quantity determine the applicable statutory maximum, those factors must be found by a jury or admitted by the defendant before the defendant can be sentenced to more than the relevant maximum for the generic crime. *Buckland*, 289 F.3d at 568.

Here, the generic crime is 21 U.S.C. § 963, conspiracy to import a controlled substance. The penalties for importation and conspiracy to import are the same. *Id.* The penalties for importing a controlled substance are set forth in 21 U.S.C. § 960(b), which lists the sentencing ranges for various drug types and quantities. Jauregui's indictment did not specify the quantity of drugs, so the relevant statutory penalties

---

**[3]** For this reason, the district court's disbelief of Jauregui's story at sentencing is immaterial to our inquiry here, which pertains to the permissible penalty range. *See Apprendi*, 530 U.S. at 490.

turned only on drug type. For an unspecified amount of methamphetamine, the applicable statutory maximum is twenty years. *Id.* § 960(b)(3); *see also United States v. Thomas*, 355 F.3d 1191, 1201 (9th Cir. 2004). For an unspecified amount of marijuana, on the other hand, the applicable statutory maximum is five years. *See* 21 U.S.C. §§ 841(b)(1)(D), 960(b)(4). Where drug type and quantity are not proven, the relevant statutory maximum is one year. *See id.* §§ 841(b)(3), 960(b)(7); *see also United States v. Hunt*, 656 F.3d 906, 916 (9th Cir. 2011).

Applying § 960(b), the district court sentenced Jauregui to seventy-one months of incarceration, less than the statutory maximum for methamphetamine but more than the statutory maximum for marijuana. Whether that sentence is permissible turns on whether, in the course of pleading guilty, Jauregui admitted to conspiring to import methamphetamine.

## A

"In assessing the scope of the facts established beyond a reasonable doubt by a guilty plea, we must look at what the defendant actually agreed to—that is, what was actually established beyond a reasonable doubt." *United States v. Banuelos*, 322 F.3d 700, 707 (9th Cir. 2003). Our analysis thus depends on what facts Jauregui admitted when he entered his guilty plea. When sentencing results from a guilty plea, "[t]he government has the burden 'at the plea colloquy to seek an explicit admission of any unlawful conduct which it seeks to attribute to the defendant'" at sentencing. *Thomas*, 355 F.3d at 1199 (quoting *United States v. Cazares*, 121 F.3d 1241, 1248 (9th Cir. 1997)).

The government does not attempt to rely on Jauregui's indictment to establish his admission of conspiracy to import

methamphetamine, for good reason. In the indictment, the government alleged that Jauregui "did knowingly and intentionally conspire with other persons known and unknown . . . to import *methamphetamine*, a Schedule II Controlled Substance, into the United States," thereby violating 21 U.S.C. §§ 952, 960, and 963 (emphasis added). "A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements *necessary* to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce*, 488 U.S. 563, 569 (1989) (emphasis added). A guilty plea does not, however, inevitably constitute an admission of all facts alleged in the indictment, as "allegations not necessary to be proved for a conviction . . . are not admitted by a plea." *Cazares*, 121 F.3d at 1247. Applying this principle, our court held in *Thomas* that a guilty plea for possession with intent to distribute under 21 U.S.C. § 841(a)(1) was not an admission of the drug quantity alleged in the indictment, "[a]s drug type and quantity are not elements of the offense under § 841." 355 F.3d at 1195–96.

Here, Jauregui's guilty plea surely constituted an admission of the requisite elements to sustain his conviction for the crime of conspiracy to import a controlled substance, itself triggering a maximum sentence of one year. *See* 21 U.S.C. §§ 841(b)(3); 960(b)(7). But his plea did not, on its own, establish an admission that the substance he conspired to import was methamphetamine, a crime subject to a twenty-year maximum sentence. *See id.* § 960(b)(3). Drug type is not a necessary element of a possession offense under 21 U.S.C. § 841, *see Thomas*, 355 F.3d at 1195–96; we see no reason why the same would not be true for an importation offense under § 960. Because drug type is "not necessary to be proved for a conviction," *Cazares*, 121 F.3d at 1247, Jauregui's guilty plea did not constitute an admission that he

conspired to import the drug type alleged in the indictment—that is, methamphetamine.

The government instead relies solely on Jauregui's factual basis admissions during the plea colloquy. A review of that colloquy establishes that Jauregui never admitted to conspiring to import methamphetamine.

Instead, he specifically asserted that he had agreed to import only marijuana, not methamphetamine. In accordance with this limited admission, Jauregui's consistent account, as the prosecution explained at the sentencing hearing, was that he had, in fact, withdrawn from the marijuana importation agreement before undertaking the drive across the border and had no knowledge of the methamphetamine found in his car until the FBI agents told him of it.

Jauregui did, however, admit during his plea colloquy that "[h]e became a member of the conspiracy knowing of its object to import a controlled substance and intending to help accomplish that object" and also that "it was *reasonably foreseeable* that the controlled substance may be methamphetamine" (emphasis added). It is this "reasonably foreseeable" statement that the government contends was sufficient to support Jauregui's sentence for conspiracy to import methamphetamine.[4]

---

[4] At oral argument, the government argued for the first time that Jauregui's sentence could be sustained based on his attorney's statement that "the agreement was either for marijuana or methamphetamine." Oral Argument at 16:51, *United States v. Jauregui*, No. 16-50429 (9th Cir. July 10, 2018), https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000013997. But the district court immediately requested clarification of that statement. Jauregui's attorney

## B

Our question, then, is whether Jauregui's admission—that "it was reasonably foreseeable that the controlled substance may be methamphetamine"—was sufficient under *Apprendi* to expose Jauregui to sentencing under the statutory maximum for conspiracy to import methamphetamine. The applicable test is provided by our decision in *Banuelos*.

Under *Banuelos*, two findings are necessary to hold a defendant liable for conspiracy involving a particular drug type or quantity. First, the district court must find "that the conspiracy distributed a particular type and quantity of drugs"—that is, the *existence* of a conspiracy involving the particular drug type and quantity. *Banuelos*, 322 F.3d at 704. And second, the district court must also make a determination about the defendant's personal responsibility—"that the type and quantity were either within the scope of [the defendant's] agreement with his coconspirators *or* that the type and quantity were reasonably foreseeable to [the defendant]." *Id.* (emphasis added).

As to the second prong of *Banuelos*, Jauregui did not admit that importing methamphetamine was within the scope of his agreement with his coconspirators. But he did admit that "it was reasonably foreseeable that the controlled substance" he would transport "would be methamphetamine under the *Pinkerton* case." Under *Banuelos*, this admission was sufficient to satisfy this prong and potentially to expose

explained that Jauregui "believed he was agreeing to import marijuana, but it was reasonably foreseeable that the substance would be methamphetamine under the *Pinkerton* case." Thus, we do not understand the statement that "the agreement was either for marijuana or methamphetamine" to constitute an admission distinct from the one discussed in the text.

Jauregui to liability for a federal drug conspiracy to import that methamphetamine.

Nothing Jauregui admitted during his plea colloquy, however, even hints at *Banuelos*'s first prong—"that the conspiracy distributed a particular type and quantity of drugs." *Id.* Jauregui never admitted that there was in fact a conspiracy whose object was importing methamphetamine, nor did he ever admit that the substance found in his vehicle was, in fact, methamphetamine.[5]

To be sure, there was likely evidence available that might have supported the conclusion that there was, in fact, a methamphetamine conspiracy. This issue perhaps "could easily have been avoided had the district court or the prosecutor been more precise during the plea colloquy." *Hunt*, 656 F.3d at 916. But *Apprendi* prohibits a court from relying on evidence that could support imposing a sentence essential to determining the statutory maximum unless the essential fact has been admitted or found beyond a reasonable doubt. *See* 530 U.S. at 490. As Jauregui's

---

[5] We recognize that, owing to the ambiguity of the word "conspiracy," *Banuelos*'s statement that "the district court was required to find . . . that the *conspiracy* distributed a particular type and quantity of drugs," 322 F.3d at 704 (emphasis added), could be interpreted to mean that the district court was required to find that Jauregui's coconspirators actually "distributed a particular type and quantity of drugs," not that they agreed to do so, *see Conspiracy*, Merriam-Webster, https://www.merriam-webster.com/dictionary/conspiracy (last visited Jan. 17, 2019) (defining "conspiracy" as both "the act of conspiring together" and "a group of conspirators"). Even under this alternative interpretation, however, the first prong of *Banuelos* is not satisfied. Jauregui never admitted that his coconspirators in fact distributed methamphetamine, just that it was reasonably foreseeable that someone might do so. *Cf.* 322 F.3d at 705 ("On the basis of Banuelos' own admission, the district court found beyond a reasonable doubt that the conspiracy distributed more than 1000 kilograms of marijuana.").

admissions did not establish the existence of a conspiracy to import methamphetamine, he could not properly be sentenced for conspiracy to import methamphetamine.

The government's argument—that Jauregui may be held liable for a conspiracy involving methamphetamine even though he never admitted the existence of such a conspiracy—would expand *Banuelos*, potentially holding a defendant liable for all reasonably foreseeable objects of a conspiracy even if those objects were never agreed upon by any of the coconspirators. Given that "attempts to broaden the already pervasive and wide-sweeping nets of conspiracy prosecutions" are disfavored, *Grunewald v. United States*, 353 U.S. 391, 404 (1957), we decline to adopt the government's sweeping interpretation of *Banuelos*.

## C

In sum, Jauregui's admission that "it was reasonably foreseeable that the controlled substance may be methamphetamine" did not permit the district court to sentence him for conspiracy to import methamphetamine. The district court therefore erred in imposing a sentence exceeding the statutory maximum for conspiracy to import marijuana.

## III

Although the district court erred, relief is not warranted unless the error satisfies the plain error standard. We conclude that, under plain error review, reversal is warranted.

First, the error was plain. As already discussed, under *Banuelos*'s standard, it is clear that Jauregui never admitted to any facts establishing that "the conspiracy distributed

[the] particular type and quantity of drugs"—that is, methamphetamine, for which he was sentenced. 322 F.3d at 704.

Second, this error resulted in a sentence eleven months longer than the appropriate statutory maximum and so affected Jauregui's substantial rights. *See United States v. Anderson*, 201 F.3d 1145, 1152 (9th Cir. 2000) ("An error that results in a longer sentence undoubtedly affects substantial rights."). The evidence was certainly not "overwhelming" with respect to whether Jauregui participated in a methamphetamine conspiracy. *See United States v. Ornelas*, 906 F.3d 1138, 1146 (9th Cir. 2018) (holding that a defendant's substantial rights were affected by a "plain instructional error" where "the evidence was not 'overwhelming' as to the omitted element"). Jauregui did not so admit, and again, in the plea context, the only relevant evidence is what the defendant admitted, not what might have well been established in a trial.[6] And contrary to the dissent's assertions, the record actually indicates that Jauregui would not have admitted this fact, as he repeatedly maintained—during his interrogation, plea colloquy, and sentencing—that the object of the conspiracy he joined was to import marijuana and that he withdrew from that

---

[6] The dissent argues that the presentence investigation report's discussion of the methamphetamine found in Jauregui's car strongly suggests the existence of a methamphetamine conspiracy. Dissent Op. at 30. Although we have previously considered "undisputed evidence" found in a presentence investigation report for purposes of plain error analysis, *United States v. Valensia*, 299 F.3d 1068, 1076 (9th Cir. 2002), the presentence report in this case is inapposite. Here, Jauregui consistently maintained that he did not know that there were *any* drugs in his car, let alone over six kilograms of methamphetamine. Moreover, it is conceivable that there was no such conspiracy. For example, one person, acting alone, may have conceived a scheme to put the methamphetamine in Jauregui's car. Alternatively, the conspirators could have been mistaken as to the drug type placed in the car.

conspiracy. The portions of Jauregui's interrogation quoted by the dissent discuss a conspiracy to import only *marijuana*, not methamphetamine. Dissent Op. at 30–31.

Third and finally, the error would seriously undermine the fairness and integrity of the judicial proceedings. Normally, "the possibility of additional jail time . . . warrants serious consideration in a determination whether to exercise discretion under Rule 52(b)," especially where the district court plays a significant role in determining the appropriate sentence. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907 (2018); *see also id.* at 1908 ("The risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings in the context of a plain Guidelines error because of the role the district court plays in calculating the range and the relative ease of correcting the error.").

Moreover, as already noted, the Supreme Court has expressly admonished courts to "view with disfavor attempts to broaden the already pervasive and wide-sweeping nets of conspiracy prosecutions." *Grunewald*, 353 U.S. at 404. Conspiracy is frequently prosecuted, *see* 2 Wayne R. LaFave, *Substantive Criminal Law* § 12.1(b) (3d ed. 2017), and "prosecutors seem to have conspiracy on their word processors as Count I; rare is the case omitting such a charge," *United States v. Reynolds*, 919 F.2d 435, 439 (7th Cir. 1990). Yet, as noted above, the government's position here would extend—beyond the already-expansive *Banuelos* standard—the scope of traditional conspiracy law.

"The requirement that the government prove facts supporting a greater sentence beyond a reasonable doubt, or that the defendant admit such facts, . . . is not an irrelevant technicality." *Hunt*, 656 F.3d at 916. To the contrary, the jury trial right, guaranteed by the Sixth Amendment,

involves "constitutional protections of surpassing importance." *Apprendi*, 530 U.S. at 476. Under the circumstances here, the district court's fundamental error warrants reversal.

## IV

The dissent contends that, in light of our conclusion that Jauregui did not admit the drug type charged in his indictment, the proper course of action is to vacate his conviction altogether, as there would be insufficient factual basis for his guilty plea. Dissent Op. at 33–34. Not so. "Under the decisions in this circuit, a plea of guilty admits the facts constituting the elements of the charge." *Cazares*, 121 F.3d at 1246. Thus, there is no basis for us to conclude that Jauregui's guilty plea to conspiracy to import a controlled substance lacked a factual basis. Moreover, because Jauregui "challenged only his sentence, and not his conviction," we lack the power to vacate his conviction. *Banuelos*, 322 F.3d at 706. Instead, "we are required to remand the case with instructions to the district court to resentence [him] 'subject to the maximum sentence supported by the facts found by the [fact-finder] beyond a reasonable doubt.'" *Id.* (second alteration in original) (quoting *United States v. Nordby*, 225 F.3d 1053, 1062 (9th Cir. 2000)). We are not, as the dissent maintains, "[s]wapping in a specific uncharged drug type," Dissent Op. at 26–27, but rather remanding to the district court to sentence Jauregui in accordance with the limitation imposed by the Sixth Amendment's jury trial guarantee—that is, based on the facts Jauregui admitted as part of his plea colloquy.

Because Jauregui did not admit the facts necessary to establish his eligibility to be sentenced for conspiracy to import methamphetamine under *Banuelos*, the district court

plainly erred in imposing a sentence in excess of the statutory maximum for conspiracy to import marijuana, the only controlled substance admitted by Jauregui. We therefore vacate Jauregui's sentence and remand for resentencing in accordance with this opinion.

## VACATED and REMANDED.

BERZON, Circuit Judge, concurring:

I write separately to emphasize the confusion that *United States v. Banuelos*, 322 F.3d 700 (9th Cir. 2003), has wrought, both in our criminal law doctrine and in our case law more generally, and to suggest that this court should reconsider *Banuelos* en banc.

## I

For conviction of the crime of conspiracy, "two different types of intent are generally required—the basic intent to agree, which is necessary to establish the existence of the conspiracy, and the more traditional intent to effectuate the object of the conspiracy." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 443 n.20 (1978). This latter intent—the intent to achieve a particular objective—is sometimes referred to as "specific intent." 2 Wayne R. LaFave, *Substantive Criminal Law* § 12.2(c)(2) (3d ed. 2017). Because this specific intent is a predicate to liability for conspiracy, "individuals who have together committed a certain crime have not necessarily participated in a conspiracy to commit that crime." *Id.* One treatise provides an illustrative example:

> [A]ssume that two persons plan to destroy a building by detonating a bomb, though they

know and believe that there are inhabitants in the building who will be killed by the explosion. If they do destroy the building and persons are killed, they are guilty of murder, but this is because murder may be committed other than with an intent-to-kill mental state. Their plan constitutes a conspiracy to destroy the building, but not a conspiracy to kill the inhabitants, for they did not intend the latter result.

*Id.* (footnotes omitted).

By contrast, under what is referred to as *Pinkerton* liability, the law "makes a conspirator criminally liable for the *substantive* offenses committed by a co-conspirator when they are reasonably foreseeable and committed in furtherance of the conspiracy." *United States v. Long*, 301 F.3d 1095, 1103 (9th Cir. 2002) (per curiam) (emphasis added) (citing *Pinkerton v. United States*, 328 U.S. 640, 645–48 (1946)). Thus, in the building destruction illustration above, a coconspirator who does not in fact detonate the bomb can, under *Pinkerton*, be held liable for killing its inhabitants, even though he would not be guilty of conspiracy to do so. *See* 2 LaFave, *supra*, § 12.2(c)(2).

The distinction between liability for the crime of conspiracy and *Pinkerton* liability for substantive crimes in furtherance of the conspiracy derives from two basic principles of traditional conspiracy law—that "conspiracy is a distinct offense from the completed object of the conspiracy," *Garrett v. United States*, 471 U.S. 773, 778 (1985), and that "the conspiracy to commit an offense and the subsequent commission of that crime normally do not merge into a single punishable act," *Iannelli v. United States*, 420 U.S. 770, 777 (1975). But our precedents concerning

sentencing for conspiracy drug offenses under both the U.S. Sentencing Guidelines and conspiracy statutes have muddied these waters.

*United States v. Becerra*, 992 F.2d 960 (9th Cir. 1993) was an early case addressing sentencing for conspiracy drug offenses. *Becerra* held that, under the then-applicable U.S. Sentencing Guidelines, "each conspirator may be sentenced only for the quantity of drugs that he reasonably foresaw would be distributed or that fell within the scope of his own agreement with his co-conspirators." *Id.* at 966. Applying this standard, *Becerra* reversed the sentence of a defendant who had distributed only two of the twenty-five kilograms of cocaine involved in the crime, concluding that there were "no facts on which the court could have based a finding that [he] knew about or could reasonably foresee the 25-kilogram transaction." *Id.* at 967.

*Becerra* relied upon the 1991 Guidelines,[1] which provided that relevant conduct in determining the Guidelines range should include "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant *would be otherwise accountable.*" U.S. Sentencing Guidelines Manual § 1B1.3(a)(1) (U.S. Sentencing Comm'n 1991) [hereinafter 1991 U.S.S.G.] (emphasis added). The corresponding commentary explained that, "[i]n the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant 'would be

---

[1] *Becerra* cited two earlier cases discussing the 1991 Guidelines. *See United States v. Petty*, 982 F.2d 1374, 1376 (9th Cir.), *amended and superseded*, 992 F.2d 887 (9th Cir. 1993); *United States v. Navarro*, 979 F.2d 786, 788 (9th Cir. 1992); *see also United States v. Torres*, 869 F.3d 1089, 1096 n.8 (9th Cir. 2017) ("It appears that *Becerra* relied on the 1991 version of the Guidelines, which was in effect before the Guidelines were amended in November 1992.").

otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity *that was reasonably foreseeable* by the defendant." *Id.* § 1B1.3 cmt. 1 (emphasis added). *Becerra*'s interpretation of the relevant Guideline was premised on this commentary. *See* 992 F.2d at 966.

The "reasonably foreseeable" language in the Guidelines commentary states *Pinkerton*'s test for substantive crimes committed by a conspiracy verbatim, adopting that test regarding the "conduct of others" for purposes of the Guidelines. *Compare Pinkerton*, 328 U.S. at 647–48, *with* 1991 U.S.S.G. § 1B1.3 cmt. 1. That adoption made sense, as *substantive* crimes in furtherance of a conspiracy and reasonably foreseeable to the defendant are, as the Guidelines suggest, conduct "for which . . . the defendant would be otherwise accountable," and so are relevant conduct for sentencing purposes. 1991 U.S.S.G § 1B1.3(a)(1).

In a footnote, *Becerra* indicated that the standard applying to sentencing "under the statutory mandatory minimums" was no more expansive. 992 F.2d at 967 n.2.**[2]** In so suggesting, *Becerra* did not mention the distinction between the specific intent of members of a conspiracy required for the conviction for the crime of conspiracy and a

---

**[2]** This footnote was a response to the government's argument "that the language of 21 U.S.C. § 841(b) allows a court to sentence a defendant based on the amount of cocaine 'involved' in an offense, rather than assessing an individual defendant's level of responsibility." *Becerra*, 992 F.2d at 967 n.2. Section 841(b) imposes a minimum sentence for crimes "involving" certain quantities of drugs for defendants, like the defendants in *Becerra*, with a prior felony drug conviction. *Id.* (quoting 21 U.S.C. § 841(b)(1)(A)). Thus, the government's argument—which *Becerra* rejected—was that the statutory minimum applied even if the defendant had no individual responsibility under the Guidelines. *See id.*

*Pinkerton*-theory conviction for substantive crimes foreseeably committed in furtherance of a conspiracy. *Becerra* had no reason to be so precise, as the statutory provision at issue—21 U.S.C.§ 841(b)—applies to both conspiracy convictions and substantive crimes committed in furtherance of a conspiracy.

*Banuelos*, the next case concerning sentencing and drug crime conspiracy, directly concerned the application of the statutory penalty provisions to a conviction for drug conspiracy. *See* 322 F.3d at 703. *Banuelos* took up *Becerra*'s terse suggestion as to the equivalency between the Guidelines' related conduct provision and the statutory penalty provision and held that, "to sentence [the defendant] pursuant to . . . any penalty provision tied to a particular type or quantity of drug" for a drug conspiracy, "the district court [is] required to find not only that the conspiracy distributed a particular type and quantity of drugs, but also that the type and quantity were either within the scope of [the defendant's] agreement with his coconspirators or that the type and quantity were reasonably foreseeable to [the defendant]." *Banuelos*, 322 F.3d at 704. *Banuelos* specifically noted that "[t]his rule is well-settled as a matter of sentencing under the Guidelines, but we have also applied it to sentencing under the statute of offense." *Id.* (citing *Becerra*, 992 F.2d at 966–67, 967 n.2). In so concluding, *Banuelos* erroneously imported the Guidelines standards for determining related substantive conduct into the standards for conviction for conspiracy under the federal drug statutes.

Following these twists and turns, it appears that *Banuelos* unwittingly imported the test for *Pinkerton* liability for substantive crimes in furtherance of a conspiracy into the determination of whether a defendant can be held liable for the crime of conspiracy itself, thereby conflating

liability for the crime of conspiracy and for substantive crimes committed by the conspiracy.**[3]**

## II

In doing so, *Banuelos* muddied an already-confusing area of law. "Although the crime of conspiracy is 'predominantly mental in composition,' there has nonetheless always existed considerable confusion and uncertainty about precisely what mental state is required for this crime." 2 LaFave, § 12.2(c) (footnote omitted) (quoting Albert J. Harno, *Intent in Criminal Conspiracy*, 89 U. Pa. L. Rev. 624, 632 (1941)). It is telling that, were we dealing with the traditional crime of conspiracy, our inquiry here would be simpler.

In the plea colloquy, Jauregui admitted that he agreed to import marijuana and so intended to accomplish that result. But Jauregui never acknowledged that he agreed with his coconspirators to import methamphetamine. Thus, he never admitted that he intended to achieve that result.

---

**[3]** I am not the first to voice concern about *Banuelos*'s importation of the Guidelines' relevant conduct determination for substantive offenses into the elements of the statutory crime of conspiracy. *United States v. Torres* expressed discomfort with *Banuelos*'s reasoning but declined to confront the issue, concluding that the defendants were not entitled to relief under plain error review. 869 F.3d at 1106. The *Torres* majority's concerns regarding *Banuelos* were primarily directed at the inconsistency between a new, conjunctive Guidelines standard and the disjunctive *Banuelos* standard, not at the tension between *Banuelos* and traditional conspiracy law noted here. *See id.* at 1108; *see also* U.S.S.G. § 1B1.3(a)(1)(B). Judge Ikuta's concurrence more specifically criticized tethering sentencing under the conspiracy statute to the Sentencing Guidelines' standard for relevant conduct. *Id.* at 1099 (Ikuta, J., specially concurring).

That Jauregui admitted that "it was *reasonably foreseeable* that the controlled substance may be methamphetamine" would not, under traditional conspiracy law, establish that he knowingly joined a conspiracy whose object was importing methamphetamine. Although Jauregui's lack of awareness regarding his coconspirators' involvement of methamphetamine may have been negligent, "[o]ne cannot negligently enter into a conspiracy." *United States v. Ganji*, 880 F.3d 760, 776 (5th Cir. 2018). As the building destruction illustration discussed above demonstrates, coconspirators who plan to bomb a building can reasonably foresee that people will die as a result of a building's destruction but not intend for that result. *See* 2 LaFave, *supra*, § 12.2(c)(2). Under those circumstances, they could perhaps be liable for reckless murder, negligent homicide, or felony murder. *See id.* But that reasonable foreseeability alone does not give rise to liability for *conspiracy* to commit a homicide.

To be sure, under *Pinkerton*, Jauregui's admission that "it was reasonably foreseeable that the controlled substance may be methamphetamine" could establish his liability for the substantive crime of *importation* of methamphetamine—if the government had in fact alleged and proven that Jauregui's coconspirators were guilty of importation of methamphetamine and that the importation of methamphetamine was in furtherance of the conspiracy. But *Pinkerton* applies only to substantive offenses, not the underlying crime of conspiracy. Here, the charge of importation of methamphetamine was dismissed; the only crime for which Jauregui was convicted is conspiracy to import a controlled substance. And as to that conspiracy, Jauregui never admitted the alleged objective—that is, the importation of methamphetamine. The foreseeability of that objective is not enough under ordinary conspiracy law to

establish the conspiracy's actual objective, or Jauregui's knowledge of it.

I also note that *Banuelos* appears to have departed from our earlier case law. In *United States v. Umagat*, 998 F.2d 770 (9th Cir. 1993), a group of defendants convicted of conspiracy to smuggle marijuana argued that there was insufficient evidence to support their convictions. *Id.* at 771. In considering their arguments, *Umagat* recognized that "a defendant cannot be legally bound to a conspiracy unless his understanding with co-conspirators 'was of sufficient scope to warrant the conclusion that he embraced the common purpose of the conspiracy.'" *Id.* at 772–73 (quoting *United States v. Bibbero*, 749 F.2d 581, 587 (9th Cir. 1984)). "Indicative of a defendant's understanding are the degree of his knowledge, actual or constructive, of the scope of the *overall* conspiracy, and the extent to which his own benefits depended on the success of the *entire* venture." *Id.* at 773. Applying this standard, *Umagat* reversed the convictions of two of the defendants who played only a minor role in the conspiracy, concluding that "[n]either the evidence adduced at trial nor the scope of their own actions suggests either that they possessed actual knowledge of the breadth of the overall conspiracy, or that we may attribute such knowledge to them." *Id.*

In setting forth its test for liability for a drug conspiracy, *Banuelos* did not discuss *Umagat* or explain why traditional principles of conspiracy would not apply. In Jauregui's case, there is no admission to support his participation in a drug conspiracy whose object was so broad as to include both marijuana and methamphetamine. That should have been the end of the inquiry.

**III**

The government's position in this case would seriously aggravate the tension *Banuelos* has already created with traditional conspiracy law. In the building destruction illustration discussed above, for example, the government's position would hold all the conspirators liable for conspiracy to commit murder—even though they never agreed to murder anyone and also never in fact destroyed the building—because murder was reasonably foreseeable to them if the object of the conspiracy were carried out. *Cf.* 2 LaFave, *supra*, § 12.2(c)(2).

Although the principal opinion reaches the correct result, it should not have needed to thread its way through *Banuelos*'s revamping of traditional conspiracy law to do so. *Banuelos* should be revisited.[4]

---

CASTEL, District Judge, dissenting:

I respectfully dissent.

I am of the view that there was no plain error in sentencing Martin Jauregui for participation in a conspiracy to import methamphetamine, and that his sentence and judgment of conviction should be affirmed. But my disagreement with the majority does not end here. On this record I do not believe Jauregui can be sentenced lawfully for the crime of conspiracy to import marijuana, a crime for which he has been neither charged nor convicted. Swapping

---

[4] As noted earlier, a panel of this court has already recognized that *Banuelos* should be reconsidered, albeit for different reasons. *See supra* note 3.

in a specific uncharged drug type—even at the request of a defendant—is wholly unlike permitting a lawful sentence to be imposed on a lesser-included quantity.  If, as the majority holds, the district court committed plain error in sentencing Jauregui for conspiracy to import methamphetamine, I would vacate the judgment and return the parties to the position they were in at the outset of the plea proceeding because the asserted error would have infected both the sentence and the underlying guilty plea.[1]

I.  There Was No Plain Error in Finding an Adequate Factual Basis for the *Existence of a Conspiracy to Import Methamphetamine.*

I agree with the majority that under this Court's precedents, in order to sentence Jauregui for a methamphetamine conspiracy, it was necessary for Jauregui to admit (1) the existence of a conspiracy to import methamphetamine; and (2) that he participated in that conspiracy, either with knowledge that its unlawful object was the importation of methamphetamine or that it was reasonably foreseeable to him that importation of methamphetamine was its unlawful object.  *United States v. Banuelos*, 322 F.3d 700, 704 (9th Cir. 2003).  I also agree with the majority that, at the plea colloquy, his admission of the first prong of the *Banuelos* test was inadequate but I disagree that this error, which was never raised in the district court, satisfies plain-error review.

There appears to be an odd disparity between the level of proof which a judge is required to find before accepting a guilty plea and that which the judge must find before

---

[1] While Jauregui's brief does not challenge his count of conviction, his notice of appeal is from the judgment of conviction and not merely the sentence.

imposing a sentence dependent on drug type or quantity. A constitutionally valid plea proceeding is not the opportunity to prove the defendant's guilt beyond a reasonable doubt; it waives the government's requirement to do so. *Florida v. Nixon*, 543 U.S. 175, 187 (2004). For a valid guilty plea to a crime, a factual basis for the plea must be established at any time "[b]efore entering judgment on a guilty plea . . . ." Fed R. Crim. P. 11(b)(3). A defendant's admission is one of the "many different ways" that a factual basis is properly established. *United States v. Gaither*, 245 F.3d 1064, 1068 (9th Cir. 2001). The district court "may rely on presentence reports in determining the factual basis for a plea, notwithstanding the fact that presentence reports commonly include hearsay." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1120 n.5 (9th Cir. 2003) (internal citation omitted). "There is no requirement of an express finding of a factual basis during the plea colloquy . . . . Rather, it must be established on the record that there is sufficient evidence to support the conclusion that the defendant is guilty, and the court must make the determination before entering judgment." *In re Ellis*, 356 F.3d 1198, 1205 (9th Cir. 2004) (en banc) (quotation marks, internal citation and alteration omitted); *see also* Advisory Committee Notes to 1974 Amendments to Fed. R. Crim. P. 11 (predecessor subdivision f).[2]

But in the specific context of the adequacy of a finding of drug quantity and type for the purposes of sentencing, this Court has held that "[i]n assessing the scope of the facts established beyond a reasonable doubt by a guilty plea, we must look at what the defendant actually agreed to – that is, what was actually established beyond a reasonable doubt."

---

[2] On its face, Fed. R. Crim. P. 11(b)(3) would apply, for example, to a crime carrying a mandatory life term. 18 U.S.C. § 1111 (murder within the territorial jurisdiction of the United States).

*United States v. Thomas*, 355 F.3d 1191, 1199 (9th Cir. 2004) (*quoting Banuelos*, 322 F.3d at 707); *accord United States v. Hunt*, 656 F.3d 906, 912 (9th Cir. 2011). This Court appears to require an admission by defendant that meets a beyond-a-reasonable-doubt standard. Accepting this Court's precedent imposing a higher standard than Rule 11(b)(3) on statutory sentencing enhancement factors, I agree that the allocution by Jauregui on the first prong of the *Banuelos* test does not meet this high standard.

I agree with the majority that the error here is subject to plain-error review, but I differ with its conclusion upon such review. As a starting point, plain-error review may appropriately look at the presentence report and other reliable sources of information before the district court. *United States v. Valensia*, 299 F.3d 1068, 1076 (9th Cir. 2002) (presentence report considered in reaching the conclusion that the failure to obtain an admission of drug quantity was not plain error). The presentence report and the translated and transcribed debriefing of Jauregui by border agents were before the district court in the pre-judgment sentencing proceeding.

There was significant and uncontroverted evidence before the district court that a conspiracy existed, it included multiple participants in addition to Jauregui, and the objective of these other participants, as demonstrated by their actions, was to import into the United States methamphetamine and not some other drug. Conspiracies, their participants and their objectives may be proven by circumstantial evidence. *United States v. Mincoff*, 574 F.3d 1186, 1192 (9th Cir. 2009). "[T]he nature of a conspiracy is such that it can rarely be proved in any other way." *United States v. Perez*, 491 F.2d 167, 171 (9th Cir. 1974).

Methamphetamine was unquestionably imported by Jauregui into the United States.**[3]** Strong circumstantial evidence supports the conclusion that Victor, his recruiter and handler, who had a car registered in Jauregui's name and gave the car to Jauregui knowing that he would drive it across the border, had conspired with others (excluding Jauregui) to import methamphetamine. Jauregui told the agents that he used methamphetamine daily, and that on the day of his arrest, he went to Victor's residence to purchase methamphetamine for personal use, at which time he received permission to borrow the car in order to visit his aunt in the United States. The firewall of the vehicle carried eight packages of methamphetamine of 97.3% purity totaling 6.485 kilograms. The sentencing court noted that the quantity would support "60 to 65,000 individual hits of methamphetamine . . . ." The street value of the methamphetamine, using the border agent's estimate of $10,000 to $15,000 per pound, is between approximately $142,000 and $214,000.

Jauregui told the interviewing agents that "*they* said *they* were going to tell me when, when *they* were going to load it, when *they* were going to unload it," "[t]hat *they* were going to tell me where to go and that *they* were going to unload it," that "*[t]hey* had to get the car to unload it," and that "*they* were going to tell me what day *they* were going to load -, *they* were going to load it, everything, everything, everything." (emphasis added.) Referring to Victor and the car, Jauregui stated, "And why did he lend it to me? Because *they* hadn't taken anything out."

---

**[3]** I do not suggest that the actual importation of methamphetamine dispenses with the need to prove a conspiracy or its object. But as included in the totality of the evidence, it may be considered in deciding whether a conspiracy to import methamphetamine existed.

Jauregui told the agents that Victor gave him an in-person introduction to at least one other member of the conspiracy: "[H]e took me over there with him and he'd told me. . . what he was going to pay me when I was going to cross and all that."  The agent then asked, "[T]he man Victor introduced you to. . . He was going to pay you?"  To which Jauregui responded, "Supposedly."  Jauregui also made reference to Victor having bosses: "[Q.] Do you think that vehicle belonged to Victor? [A.] Uh hm, I think so.  I thought it belonged to his bosses but well, Victor was the one who'd make the arrangements for me."  Earlier, Jauregui was asked whether Victor was "a representative from a cartel, yes or no?"  He responded, "Well, yes."  Explaining why he was fearful of declining to transport narcotics as instructed, Jauregui told the agents, "I know those people are powerful."  He described Victor as "just a servant," and stated, "The same way they used me, he's also a servant."

The existence of other actors, besides Victor and Jauregui, who were intent on moving drugs into the United States proved the existence of a conspiracy to import drugs.  The totality of the quantity of the methamphetamine, its street value in excess of six figures, its placement in the firewall of the car, the need to plan ahead for its removal from the car once it crossed into the United States and its actual importation into the United States was circumstantial evidence that proved that at least two persons other than Jauregui agreed that the object of the conspiracy was to import methamphetamine.

There was no plain error in light of the record's extensive evidence that the importation of methamphetamine was the object of a conspiracy with two or more members other than Jauregui.  *United States v. Cotton*, 535 U.S. 625, 632–33 (2002) (where the evidence of drug quantity was

"'overwhelming' and 'essentially uncontroverted,'" the failure to charge quantity in the indictment did not "seriously affect the fairness, integrity, or public reputation of judicial proceedings."); *Valensia*, 299 F.3d at 1076–77 (failure to establish drug quantity at plea colloquy was not plain error in light of attorney statements and facts contained in presentence report); *United States v. Minore*, 292 F.3d 1109, 1117–20 (9th Cir. 2002) (district court's failure to advise defendant of government's burden as to drug quantity was not plain error in light of the record's "overwhelming evidence" of quantity).

*Cotton* teaches that on a plain-error review the question whether the error affected substantial rights, as it did here by enhancing the sentence, is distinct from whether the error seriously affects the fairness, integrity or public reputation of judicial proceedings. 535 U.S. 632–33 (declining to reach the third prong of inquiry on plain error review because the fourth prong could not be met). The observation of a unanimous Court in that case, speaking of a rejected plain-error claim, comes to mind: "The real threat then to the 'fairness, integrity, and public reputation of judicial proceedings' would be if respondents, despite the overwhelming and uncontroverted evidence that they were involved in a vast drug conspiracy, were to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial." 535 U.S. at 634 (quoting *Johnson v. United States*, 520 U.S. 461, 470 (1997)).[4]

---

[4] I respectfully submit that reaching and remanding on this unpreserved error, which the government did not have the opportunity to address head-on in the district court, impairs rather enhances "the public reputation of judicial proceedings." *Cotton,* 535 U.S. 632–33. I agree

## II. Jauregui Cannot Be Convicted or Sentenced for Conspiracy to Import *Marijuana*.

Jauregui was never charged with and never entered a plea of guilty to a conspiracy to import marijuana. At the change-of-plea hearing, Jauregui responded unambiguously and unequivocally that he was pleading "guilty" to "conspiracy to import methamphetamine . . . ." The written judgment against Jauregui records a conviction for a single count of "Conspiracy to Import Methamphetamine." I submit that he cannot be sentenced for a conspiracy to import some other drug as long as his guilty plea and conviction for conspiracy to import methamphetamine stands.

There is no disagreement that a person cannot be sentenced for a particular drug type unless proven beyond a reasonable doubt at trial or based on a valid admission of type. *United States v. Buckland*, 289 F.3d 558, 568 (9th Cir. 2002) (en banc); *Banuelos*, 322 F.3d at 702. But I find no support for the proposition that a different, specific drug may be substituted for the purposes of conviction or sentencing.

Drug quantity, which is not an issue on this appeal, is different than drug type. If the quantity is not proven or encompassed within a plea, then the defendant lawfully may be sentenced for the lowest proven quantity of that drug. *See*, *e.g.*, *Thomas*, 355 F.3d at 1202. But an indictment for a specific quantity of a particular drug necessarily subsumes lesser quantities of that drug. That is an inherent characteristic of drug quantity that does not exist for drug type. This physical-world principle of lesser-included quantities does not apply to drugs of a single, specific type.

---

with the majority that "To be sure, there was likely evidence available that might have supported the conclusion that there was, in fact, a methamphetamine conspiracy."

Marijuana is not subsumed within methamphetamine.  True, this Court has endorsed "resentencing within the lower statutory sentencing range supported by a generic conviction." *United States v. Vera*, 770 F.3d 1232, 1250 (9th Cir. 2014); *see also Hunt*, 656 F.3d at 909–11.  But that is not what the majority proposes here.  A conviction for conspiracy to import *some* controlled substance would result in a maximum sentence of one year.  21 U.S.C. §§ 841(b)(3), 960(b)(7).  A conspiracy to import marijuana carries a maximum sentence of five years.  21 U.S.C. §§ 841(b)(1)(D), 960(b)(4).  I find no holding of this Court that a defendant who has been indicted for one drug type may have his plea reconstrued at his request into a plea of guilty to some other specific drug not charged in the indictment and to which no plea of guilty was entered.

I would affirm the judgment.  But if I agreed with the majority that on plain-error review there was not an adequate factual basis for a sentence for the crime of conspiracy to import methamphetamine, the error would infect both the sentence and the count of conviction.  When a plea of guilty is entered without an adequate factual basis, the proper remedy is to vacate judgment and remand for further proceedings, and not just resentencing.  *See, e.g.*, *United States v. Monzon*, 429 F.3d 1268, 1273–74 (9th Cir. 2005).  It would be beyond anomalous to conclude that there was a valid basis for a guilty plea to conspiracy to import methamphetamine but not for the sentence for that crime.

In my view, in the event of a remand, the government and Jauregui should be free to proceed to trial on both counts of the indictment: conspiracy to import methamphetamine and the substantive crime of importation. If Jauregui wishes to plead guilty to participation in a marijuana conspiracy and the government wishes to accept that plea in satisfaction of

all charges, it is a simple matter for Jauregui to waive indictment and enter a guilty plea to an information charging such a conspiracy.  The district court could then dismiss the open counts of the indictment at sentencing.